IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| TRENT ALVORD, an individual; ADRIAN JUCHAU, an individual; MELANIE ALVORD, an individual; KARISSA KENNEY, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>FLUENT INC., a Delaware corporation; REWARD ZONE USA, LLC, a Delaware corporation; RYAN SCHULKE, CEO and co-founder of Fluent, Inc., in his individual capacity; MATTHEW CONLIN, President and co-founder of Fluent, Inc., in his individual capacity; and JOHN DOES 1-20,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [18] DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(2)**<br><br>Case No. 2:19-cv-885-DBB-CMR<br><br>District Judge David Barlow |

Before the court is Defendants' Motion to Dismiss under Rule 12(b)(2) (Motion to Dismiss).[1] Defendants ask the court to dismiss Plaintiffs' Complaint[2] against all defendants for lack of personal jurisdiction.

Having considered the record and the parties' briefing, the court finds that Plaintiffs have not met their burden to make a prima facie showing that this court has personal jurisdiction over any defendant, and GRANTS the Motion to Dismiss.

---

[1] Defendants' Motion to Dismiss under Rule 12(b)(6) (Motion to Dismiss), ECF No. 18, filed January 10, 2020.

[2] Complaint, ECF No. 2, filed November 12, 2019.

## FACTS

Plaintiffs are Utah residents who complain that Defendant Fluent Inc. (Fluent), through its subsidiary Reward Zone USA, LLC (Reward Zone), sent each of them telemarketing text messages in violation of the Telephone Consumer Protection Act (TCPA).[3] Plaintiffs allege violations of the TCPA by RewardZone, by Fluent Inc. through RewardZone, and by two individuals (Matthew Conlin and Ryan Schulke) who are officers of Fluent Inc.[4] Specifically, Plaintiffs allege that RewardZone unlawfully used an autodialing device to send the text messages, and that RewardZone failed to institute or follow any internal "do-not-call" procedures as required by the TCPA, resulting in Plaintiffs receiving messages despite placing their phone numbers on the Do Not Call Registry.[5] Plaintiffs allege that the individual defendants specifically ordered the marketing activity to take place.[6] Plaintiffs also allege violation of Utah's Truth in Advertising Act because some of the content of the telemarketing messages was allegedly false and misleading.[7]

All defendants have moved to dismiss based on lack of personal jurisdiction, claiming that no defendant specifically or purposely directed any activity toward Utah, that all text message marketing for Fluent or RewardZone is conducted via third-party publishers, and that all but four of the messages identified in the complaint did not come from any publisher engaged by Defendants.[8] The parties posit that Fluent and RewardZone are subject to the same analysis, and refer to both entities as "Fluent" in the briefing. The court agrees and will do the same.

---

[3] *Id.* at 2.

[4] *Id.* at 3.

[5] *Id.* at ¶ 37, 41.

[6] *Id.* at ¶ 33–34.

[7] *Id.* at ¶ 90.

[8] Motion to Dismiss at 1.

**LEGAL STANDARD**

In considering a motion to dismiss under Rule 12(b)(2), a court must determine whether it has personal jurisdiction over a defendant. The plaintiff bears the burden of establishing personal jurisdiction, and where there is no evidentiary hearing and the motion to dismiss is decided based on affidavits and other written material, can satisfy this burden by making a prima facie showing.[9] If the presence or absence of personal jurisdiction can be established by reference to the complaint, the court need not look further.[10] The plaintiff may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant.[11] The court takes the well-pled allegations of the complaint as true to the extent they are uncontroverted by the defendant's affidavits or other written materials.[12] Where the parties' written materials conflict, the court resolves all factual disputes in the plaintiff's favor, "and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation" by the defendant.[13]

**DISCUSSION**

In an action based on a federal question, "[i]n determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."[14] Because the TCPA does not

---

[9] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008); *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).

[10] *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008).

[11] *Dudnikov*, 514 F.3d at 1070.

[12] *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990).

[13] *Id.*

[14] *Trujillo v. Williams,* 465 F.3d 1210, 1217 (10th Cir. 2006).

does not, by itself, confer nationwide service of process or jurisdiction upon federal district courts, the Federal Rules of Civil Procedure refer the court to Utah's long-arm statute,[15] which is coextensive with the constitutional limitations imposed by the Due Process Clause.[16] Therefore, the jurisdictional analysis collapses into one inquiry—whether jurisdiction comports with due process. "Personal jurisdiction over a nonresident defendant satisfies due process if there are sufficient minimum contacts between the defendant and the forum state. The minimum contacts may support specific jurisdiction or general jurisdiction."[17]

### The Court Does Not Have General Personal Jurisdiction Over Any Defendant

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."[18] The individual defendants here are residents of New York and have testified that they each have visited Utah only twice in their lives. The entity defendants are both located in the state of New York, and the uncontradicted affidavit of Daniel Barsky indicates that Fluent does no business in Utah, has no offices, employees, or members in Utah, and conducts no marketing or advertising in Utah. Further, Barsky avers that Fluent derives less than one percent of its yearly revenue from Utah and derived no revenue from the text messages at issue in this case. Plaintiffs concede in their opposition that this court does not have general personal jurisdiction over any defendant in this case,[19] and the court agrees.

---

[15] Fed.R.Civ.P. 4(k)(1)(A).

[16] Utah Code Ann. § 78B-3-201(3) ("The provisions of this part, to ensure maximum protection to citizens of this state, should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.").

[17] *Monge v. RG Petro-Mach. (Grp.) Co.,* 701 F.3d 598, 613 (10th Cir. 2012)

[18] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017).

[19] Memorandum in Opposition to Defendants' Motion to Dismiss (Opposition) at 7, ECF No. 27, filed February 18, 2020.

### The Court Does Not Have Specific Personal Jurisdiction Over Fluent, Inc. or Reward Zone USA, LLC

"In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State."[20] "Specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a "compelling case that the presence of some other considerations would render jurisdiction unreasonable," that is, whether the defendant shows that exercising specific jurisdiction offends traditional notions of fair play and substantial justice.[21] To make a showing that the defendants have minimum contacts with Utah, plaintiffs here must show that (1) the defendants purposefully directed their activities at residents of the forum state, and (2) the plaintiffs' injuries arise out of the defendants' forum-related activities.[22]

The Tenth Circuit has recognized three frameworks under which a court may find purposeful direction on the part of a defendant: "(1) continuing relationships with forum state residents ("continuing relationships"); (2) deliberate exploitation of the forum state market ("market exploitation"); and (3) harmful effects in the forum state ("harmful effects")."[23] Plaintiffs here argue that all three tests are satisfied by Defendants' conduct.

The continuing relationships framework provides that "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject

---

[20] *Id.* at 1781.

[21] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017), *see also Dudnikov*, 514 F.3d at 1071.

[22] *See Old Republic Ins. Co.*, 877 F.3d at 904.

[23] *Id.* at 905.

to regulation and sanctions in the other State for the consequences of their activities."[24] Here, Plaintiffs argue that the series of text messages allegedly sent by Fluent in violation of the TCPA show intent to create a continuing relationship with citizens of Utah.[25] However, Defendants' affidavit explains that Fluent does not send any text messages itself, but rather contracts with third-party publishers to do so; Barsky further avers that these publishers do not target any particular state.[26] Moreover, the affidavit indicates that the vast majority of the text messages Plaintiffs allege came from Fluent were not sent by authorized publishers, and that Fluent is not aware of the origin of those messages.[27]

The Tenth Circuit has previously declined to find minimum contacts in a case involving marketing emails allegedly sent by Fluent: "[Plaintiffs] presented no specific evidence contradicting Barsky's account of Fluent's involvement with the emails—it offered no evidence that Fluent itself delivered emails, had a business relationship with Utah publishers, or knew that any publishers were sending emails to Utahns."[28] In this case, Plaintiffs similarly fail to contradict Barsky's testimony that Fluent's involvement with the text messages at issue is limited to contracting with third-party publishers who do not target particular states. As such, the court cannot find that Fluent itself had the intent to create continuing relationships with residents of Utah.

The market exploitation framework requires that a defendant "continuously and deliberately exploits the forum State's market. Factors suggesting purposeful direction based on

---

[24] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (internal quotation omitted).

[25] Opposition at 9–10.

[26] Declaration of Daniel Barsky in Support of Defendants' Motion to Dismiss under Rule 12(b)(2) (Barsky Declaration) at ¶ 4, 7, 10, ECF No. 19, filed January 10, 2020.

[27] *Id.* at ¶ 12–13.

[28] *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 838 (10th Cir. 2020).

forum state market exploitation include: (a) high sales volume and large customer base and revenues and (b) extensive nationwide advertising or ads targeting the forum state."[29] Here, although the record indicates that Fluent does derive some revenue from Utah (less than one percent), this case is akin to *XMission* in that Plaintiffs do not contradict Defendants' affidavit evidence that none of that revenue was derived from or related to the text messages at issue. Further, although Fluent may have known that its contracted publishers would send advertising content nationwide, "[g]eneral knowledge that a message will have a broad circulation does not suffice" to create personal jurisdiction under the market exploitation framework.[30] Finally, although Fluent may have engaged publishers to send text messages nationwide, nothing in the record indicates that those text messages advertised Fluent's services or attempted to gain new customers for Fluent. As such, and as the Tenth Circuit held in *XMission*, the advertising component of the market exploitation framework is not satisfied here.

The harmful effects framework requires the plaintiff to show "(a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state."[31] Here, as previously discussed, the record indicates that Fluent itself does not send any text messages, but rather that publishers contracted by Fluent send advertising text messages nationwide.[32] Plaintiffs have not offered any "specific averments, verified allegations, or other evidence sufficient to create a genuine issue of fact"[33] that would contravene Barsky's sworn testimony that almost all of the complained-of text messages were

---

[29] *Id.* at 849.

[30] *Id.* at 846.

[31] *XMission*, 955 F.3d at 841.

[32] Barsky Declaration at ¶ 10.

[33] *XMission*, 955 F.3d at 8.

7

sent without Fluent's knowledge or direction, and that Fluent was not aware of the specific location of any one recipient of any authorized messages before they were sent. As such, Plaintiffs have not met their burden of showing purposeful direction under the harmful effects framework.

The Tenth Circuit has held that where a complaint fails to make a prima facie case on purposeful direction, the court need not reach the question of whether the plaintiffs' claims arise out of the defendants' activities in the forum.[34] Similarly, the court will not analyze the "fairness factors" discussed in the briefing, because the plaintiffs have failed to meet their burden on showing the existence of specific personal jurisdiction.

**The Court Does Not Have Specific Personal Jurisdiction Over the Individual Defendants**

Even were the court to have found specific personal jurisdiction over Fluent, this would not automatically confer specific personal jurisdiction over the individual defendants.[35] Instead, employees or officers of a corporation may be subject to personal jurisdiction "if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation."[36] Here, Plaintiffs have failed to make a prima facie showing of personal jurisdiction over Fluent. Similarly, Plaintiffs have not shown that Ryan Schulke nor Matthew Conlin were "primary participants" in the activities detailed in the complaint.

Plaintiffs allege that specific personal jurisdiction over Ryan Schulke, the CEO of Fluent, and Matthew Conlin, the President of Fluent, exists because the individual defendants were

---

[34] *Old Republic Ins. Co.* at 915 ("Because we hold that Old Republic's personal jurisdiction argument fails under the first step of the minimum contacts analysis—purposeful direction—we need not reach step two—whether Old Republic's claim arises out of the minimum contacts.").

[35] *See Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").

[36] *Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996).

8

directly involved in "the strategy, approval, set up, and execution of telemarketing campaigns, including the telemarketing campaigns referenced in this complaint that have violated the TCPA and invaded Plaintiffs' privacy."[37] Mr. Schulke and Mr. Conlin have each provided an affidavit in which they respectively aver that they have no involvement in any specific text-message marketing campaigns (including the messages at issue in the complaint), nor are they involved in the selection of message recipients.[38] Plaintiffs attempt to rebut this evidence with the affidavit testimony of Thomas Alvord. Alvord avers that in 2016, as chairman of a marketing company called either Funded Today or Emails Today, he engaged in discussions about a potential marketing partnership between Fluent and his company with the individual defendants.[39] This affidavit does not involve the events detailed in the complaint and does not contradict Defendants' affidavit evidence. The court cannot conclude, from the facts available to it, that Plaintiffs have made a prima facie showing that either Mr. Conlin or Mr. Schulke have the minimum contacts with Utah necessary for a finding of personal jurisdiction.

**Plaintiffs' References to Jurisdictional Discovery and Transfer of Case Are Insufficient**

In their Opposition, Plaintiffs raise the possibility of jurisdictional discovery.[40] To the extent that this was intended as a motion for jurisdictional discovery, it does not comply with the Local Rules: "No motion, including but not limited to cross-motions and motions pursuant to Fed. R. Civ. P. 56(d), may be included in a response or reply memorandum. Such motions *must*

---

[37] Complaint at ¶ 34.

[38] Declaration of Ryan Schulke in Support of Defendants' Motion to Dismiss under Rule 12(b)(2) at ¶ 5–7, ECF No. 20, filed January 10, 2020; Declaration of Matthew Conlin in Support of Defendants' Motion to Dismiss under Rule 12(b)(2) at ¶ 4–6, ECF No. 21, filed January 10, 2020.

[39] Declaration of Thomas Alvord in Support of Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss, ECF No. 27-1, filed February 18, 2020.

[40] Opposition at 2–3.

*be made in a separate document*."[41] The request also does not meet the Tenth Circuit standard for jurisdictional discovery: while jurisdictional discovery motions are liberally granted, "the burden of demonstrating a legal entitlement to jurisdictional discovery—and the related prejudice flowing from the discovery's denial—[is] on the party seeking the discovery...."[42] Plaintiffs have not addressed, much less demonstrated, the required legal entitlement and prejudice in their passing reference to possible discovery. For these reasons, to the extent that Plaintiffs' discovery reference was intended as a motion for discovery, it is denied.

During the motion to dismiss briefing, Plaintiffs also filed a Notice of Supplemental Authority directing the court's attention to 28 U.S.C. § 1631,[43] which allows a court discretionary authority to transfer a case to a proper court instead of dismissing the case. "[T]he plaintiffs, not the defendants, [ ] have the burden of proving grounds for a transfer."[44] For such a transfer to occur, the transferor court must "first satisfy itself that the proposed transferee court has personal jurisdiction over the parties."[45] Plaintiffs also must persuade the court that the transfer "is in the interest of justice."[46]

In this case, Plaintiffs do not identify a transferee court that would have personal jurisdiction over all defendants, so the court cannot take the first necessary step in determining if a transfer would serve the interests of justice. Plaintiffs further make no mention of or argument regarding the other relevant interest of justice factors. Accordingly, Plaintiffs have not proven grounds for a transfer here, and the court will not transfer this case to another court.

---

[41] DUCivR 7-1(b)(1)(A) (emphasis supplied).

[42] *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort,* 629 F.3d 1173, 1190 n.11 (10th Cir. 2010).

[43] Plaintiffs' Notice of Supplemental Authority, ECF No. 38, filed April 27, 2020.

[44] *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 105 (10th Cir. 2012) (internal quotation omitted).

[45] *Id.* (quoting *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 794 (10th Cir. 1998)).

[46] *Id.* at 105.

## CONCLUSION

Because the court finds that Plaintiffs have failed to carry their burden of making a prima facie showing that an exercise of general or specific personal jurisdiction is proper over any defendant in this action, the court DISMISSES this action WITHOUT PREJUDICE for lack of personal jurisdiction.

Signed July 28, 2020.

BY THE COURT:

_____

David Barlow
United States District Judge